# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**DOORDASH, INC.,**<br><br>Defendant | **Case No. 6:20-cv-00764**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this First Amended Complaint for Patent Infringement against DoorDash, Inc. ("DoorDash" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.   GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.   Upon information and belief, DoorDash, Inc. is a domestic corporation organized and existing under the laws of Delaware, with a principal place of business located in San Francisco, California. DoorDash, Inc. may be served through its registered agent in the State of Texas at Registered Agent Solutions, 1701 Directors Blvd., Suite 300, Austin, Texas 78744.  On information and belief, DoorDash sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing systems into the stream

of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District.  On information and belief, DoorDash specifically targets customers in the State of Texas and in this judicial District.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.  This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and mobile applications) its services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District. DoorDash Inc. is an American on-demand prepared food delivery service founded in 2013.  On information and belief, DoorDash uses logistics services to offer food delivery from restaurants on-demand throughout this District and the State of Texas.

5.  On information and belief, Defendant maintains an ongoing and continuous business presence in the State of Texas and specifically within this District, which is illustrated by the fact that DoorDash has "dasher" orientation centers in the State of Texas in Austin, San Antonio, Dallas and Houston and an office in Austin, Texas.

    *See*  https://craft.co/doordash/locations

    *See*  https://help.doordash.com/dashers/s/article/San-Antonio?language=en_US

    *See*  https://help.doordash.com/dashers/s/article/Austin-Central-Texas?language=en_US

    *See*  https://help.doordash.com/dashers/s/article/Dallas?language=en_US

*See* https://help.doordash.com/dashers/s/article/Houston-Texas?language=en_US

6.      DoorDash is also seeking to fill manager level positions in Texas, and specifically within this District.



*See:* https://www.linkedin.com/jobs/search/?currentJobId=1961947882&f_C=3205573&geoId=9200 0000&keywords=austin

7.      Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains a regular and established business presence in this District.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                                    3

**PATENTS-IN-SUIT**

8.    GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194

Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the '000

Patent") (hereinafter collectively referred to as "the GGS Patents").

9.    The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of

the United States Code.

10.   The inventions described and claimed in the GGS Patents were invented by Raymond Anthony

Joao.

11.   The GGS Patents each include numerous claims defining distinct inventions.

12.   The priority date of each of the GGS Patents is at least as early as July 31, 1999.  As of the priority

date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

13.   For example, and as evidence of the stated non-routine aspects of the inventions, during

prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864

Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in

*Alice*.  The patent examiner affirmatively and expressly found that the claims are in fact patent

eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject

matter, because none of the pending claims are directed to an abstract idea, and because there

would be no preemption of the abstract idea or the field of the abstract idea.

14.   GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent, the

'086 Patent, the '864 Patent, and the '000 Patent (collectively as the "Asserted Patents").

15.   The '194 Patent relates generally to an apparatus and method for providing recruitment

information, including a memory device for Storing information regarding at least one of a job

opening, a position, an assignment, a contract, and a project, and information regarding a job

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                          4

Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time.  *See* Abstract, '194 Patent.

16.     The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information regarding a job opening, position, assignment, contract, or project, responsive to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual.  *See* Abstract, '086 Patent.

17.     The '864 Patent relates generally to an apparatus, including a memory device for storing work schedule information or scheduling information for an individual, a transmitter for transmitting a job search request to a computer, wherein the computer is specially programmed for processing the job search request, for generating a message containing information regarding a job opening,

a position, an assignment, a contract, or a project, and for transmitting the message to the apparatus in response to the job search request; a receiver for receiving the message; and a display for displaying at least some of the information contained in the message.  *See* Abstract, '864 Patent.

18.     The '000 Patent relates generally to an apparatus, including a memory which stores work schedule information or scheduling information for an employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; a receiver which receives a first request to obtain work schedule information or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer, and the first request is received from a first communication device; a processing device, specially programmed for processing information contained in the first request, generates a first message containing the work schedule or scheduling information for the employer, hiring entity, individual, independent contractor, temporary worker, or freelancer; and a transmitter for transmitting the first message to the first communication device or to a second communication device.  The apparatus processes information in a second request.  Information contained in the second request is based on the work schedule information or the scheduling information contained in the first message.  *See* Abstract, '000 Patent.

19.     As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999.  At that time, the idea of launching DoorDash.com was still several years away.

20.     The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                                    6

21.    Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

22.    Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

23.    The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[j]ob searching activities and recruitment activities typically require efforts in introducing parties to one another, pre-screening the parties prior to, and/or subsequent to, an introduction, acting as an information gathering entity for a party, exchanging information in order to determine if a relationship is appropriate and/or desirable, negotiating a deal, and/or consummating a deal between the respective parties.  While individuals and/or employers and/or hiring entities can act on their own behalf during most of the process, one of the parties may typically enlist the efforts of an employment agency or agencies, a recruiter(s), a so-called 'headhunter(s)', an employment and/or career consultant(s), a temporary employment agency or agencies, a personal agent(s), a personal manager(s), and/or another intermediary or intermediaries, sometimes at great expense." '194 Patent at 1:59-2:6.  The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings to all parties.  As explained, as of the date of invention, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts,

limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment agency, personal agent, personal manager, and/or other intermediary." *Id.* at 2:7-17. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for a costly middle-man in the process is overcome. *Id.* at 2:18-24; 6:45-55.

24. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time. As explained, as of the date of invention, "[j]ob searching efforts and recruitment efforts may be limited by and/or be constrained by limited personal contacts, geographical constraints, monetary constraints, and/or time constraints. Oftentimes, individuals, employers and/or hiring entities, do not have the resources to conduct their own respective job searching efforts or recruitment efforts. The enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, may not be sufficient to overcome these limitations and/or constraints, particularly, if the respective employment agency or agencies, recruiter(s), so-called 'headhunter(s)', employment and/or career consultant(s), temporary employment agency or agencies, personal agent(s), personal manager(s) and/or other intermediary or intermediaries, are working with similar limitations and/or constraints." *Id.* at 2:26-42. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for extensive personal contacts and geographical proximity are overcome.

25. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time. As explained, as of the date of invention, "[t]he job search process and/or the recruitment process can typically be rendered more

difficult in instances when additional information may be requested by one or by both of the parties concerning a counterpart.  This typically results in time delays and/or additional expense to the party having to comply with such a request."  *Id.* at 2:43-48.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for time-consuming delays is overcome.

26. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and/or recruitment efforts may further be rendered more difficult when the parties are not properly pre-screened, thereby resulting in wasted time and effort, and/or when the parties are not properly informed as to the needs and/or demands of a counterpart. The needs and/or demands can include job description, job needs, project description, assignment description, salary, compensation, and/or other related information.  The failure to pre-screen the parties and/or to conduct a dialog and/or initiate interviews and/or discussions when the parties may be so far apart regarding their respective needs, requests and/or expectations, for example, those involving job duties and/or salary, can result in wasted time and effort."  *Id.* at 2:49-61.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the associated time and effort are reduced, resulting in more efficient processes and cost savings for all involved.

27. The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[c]onfidentiality is typically another concern in job searching activities and/or in recruitment activities.  Individuals, employees, and/or hiring entities may have an interest in, and/or a desire for, maintaining confidentiality during at least some initial stages of any job search

and/or recruitment effort.  In some instances, once an initial interest is expressed, any confidentiality which may have existed may be lost for the remainder of the process.  Sometimes, it may be desirable for an individual, an employer and/or hiring entity, to retain at least some level of confidentiality and/or anonymity further into the job search and/or recruitment process.  In this manner, at least some confidentiality and/or anonymity can be preserved, especially if a deal between the parties is not ultimately reached." *Id.* at 2:62-3:8.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for confidentiality in the process is enhanced. *See id.* at 6:59-65.

28.    As noted above, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea, and there would be no preemption of the abstract idea or the field of the abstract idea.  For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

29.    The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

30.    After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor; (iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768, 11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001, Callen et

al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

31.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

32.     The '194 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Oracle, Amazon, Monster, and CareerBuilder.

33.     The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus.  During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

34.     After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii)

6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

35.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

36.    The '086 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Xerox, Yahoo!, EDS, Microsoft, CareerBuilder, Monster, LinkedIn, and IBM.

37.    The '864 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '864 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/758.

38.    After conducting a search for prior art during the examination of the '864 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark; (ii) 5,758,324, 5/1998, Hartman; (iii) 5,832,497, 11/1998, Taylor; (iv) 5,862,223, 1/1999, Walker; (v) 5,884,270, 3/1999, Walker; (vi) 5,884,272, 3/1999, Walker; (vii) 5,978,768, 11/1999, McGovern; (viii) 6,157,808, 12/2000, Hollingsworth; (ix) 6,266,659, 7/2001, Nadkarni; (x) 6,370,510, 4/2002, McGovern; (xi) 6.381,592, 4/2002, Reuning; (xii) 6,398,556, 6/2002, Ho; (xiii) 6,408,337, 6/2002, Dietz; (xiv) 6,409,514, 6/2002,

Bull; (xv) 6,466,91, 10/2002, Mitsuoka; (xvi) 6,718,340, 4/2004, Hartman; (xvii) 6,873,964, 3/2005, Williams; (xviii) 7,054,821, 5/2006, Rosenthal; (xix) 7,305,347, 12/2007, Joao; (xx) 7,523,045, 4/2009, Walker; (xxi) 2001/0042000 Al, 11/2001, Defoor, Jr.; (xxii) 2002/0002476 A1, 1/2002, Mitsuoka; (xxiii) 2002/0152316 A1, 10/2002, Dietz; and (xxiv) 2005/0010467 A1, 1/2005, Dietz.

39.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '864 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

40.     The '864 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Xerox, Amazon, Monster, HP, CareerBuilder, Microsoft, LinkedIn, and General Electric.

41.     The '000 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '000 Patent, the United States Patent Examiner searched for prior art across multiple classifications.

42.     After conducting a search for prior art during the examination of the '000 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,884,272, 3/1999, Walker; (ii) 6,266,659, 7/2001, Nadkarni; (iii) 6,370,510,

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    13

4/2002, McGovern; (iv) 6,457,005, 9/2002, Torrey, (v) 7,305,347, 12/2007, Joao; and (vi) 2002/0120532 A1, 8/2002, McGovern.

43.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '000 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

44.   The '000 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, General Electric, IBM, AT&T, HP, Yahoo!, Xerox, Monster, Amazon, CareerBuilder, Microsoft, Oracle, and LinkedIn.

45.   The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

46.     Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides the DoorDash website and its ancillary sites, including its various Mobile Applications, in the United States.  The DoorDash apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing job search and/or recruitment services to individuals (including job seekers, contractors, and employers) in the United States.  The DoorDash system comprises an apparatus with multiple interconnected infrastructures that infringe the Asserted Patents.  The public-facing aspect of the DoorDash apparatus is the DoorDash website, which is available at www.DoorDash.com, together with the associated DoorDash Mobile Applications for Consumers and Drivers, respectively.  Collectively, all of the foregoing comprises the "Accused Instrumentalities."

## COUNT I
## Infringement of U.S. Patent No. 6,662,194

47.     Plaintiff incorporates the above paragraphs by reference.

48.     Defendant has been on actual notice of the '194 Patent at least as early as the date it received service of the Original Complaint in this matter.

49.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

50.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

51.     The Accused Instrumentalities comprise an apparatus for providing recruitment information.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to

individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States. On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States. *See* Figs. 1-6.



AWS Global Summit New York 2019
Keynote – Andy Fang, DoorDash

2019

DoorDash is the largest third-party delivery service in the world, supporting on-demand delivery for more than 340,000 local businesses and restaurants in 4,400 cities across the United States and Canada. To scale with its order growth of 325 percent in 2019, DoorDash uses a 10TB Amazon Aurora Postgres cluster, Amazon ElastiCache, Amazon CloudWatch, Amazon Kinesis, and Amazon Redshift to provide real-time data analytics to its last-mile logistics network, merchant services, and customer membership program. Andy Fang, co-founder and CTO at DoorDash, spoke onstage at the 2019 AWS Global Summit in New York City.

To learn more, visit aws.amazon.com/rds/aurora.

**FIGURE 1**

*See* https://aws.amazon.com/solutions/case-studies/doordash-case-study/



Amazon Aurora is a relational database service that combines the speed and availability of high-end commercial databases with the simplicity and cost-effectiveness of open source databases. The PostgreSQL-compatible edition of Aurora delivers up to 3X the throughput of standard PostgreSQL running on the same hardware, enabling existing PostgreSQL applications and tools to run without requiring modification. The combination of PostgreSQL compatibility with Aurora enterprise database capabilities provides an ideal target for commercial database migrations.

**FIGURE 2**

*See* https://aws.amazon.com/rds/aurora/postgresql-features/

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                          16

Amazon ElastiCache allows you to seamlessly set up, run, and scale popular open-Source compatible in-memory data stores in the cloud. Build data-intensive apps or boost the performance of your existing databases by retrieving data from high throughput and low latency in-memory data stores. Amazon ElastiCache is a popular choice for real-time use cases like Caching, Session Stores, Gaming, Geospatial Services, Real-Time Analytics, and Queuing.

Amazon ElastiCache offers fully managed Redis and Memcached for your most demanding applications that require sub-millisecond response times.

**FIGURE 3**

*See* https://aws.amazon.com/elasticache/

Amazon CloudWatch is a monitoring and observability service built for DevOps engineers, developers, site reliability engineers (SREs), and IT managers. CloudWatch provides you with data and actionable insights to monitor your applications, respond to system-wide performance changes, optimize resource utilization, and get a unified view of operational health. CloudWatch collects monitoring and operational data in the form of logs, metrics, and events, providing you with a unified view of AWS resources, applications, and services that run on AWS and on-premises servers. You can use CloudWatch to detect anomalous behavior in your environments, set alarms, visualize logs and metrics side by side, take automated actions, troubleshoot issues, and discover insights to keep your applications running smoothly.

**FIGURE 4**

*See* https://aws.amazon.com/cloudwatch/

Amazon Kinesis makes it easy to collect, process, and analyze real-time, streaming data so you can get timely insights and react quickly to new information. Amazon Kinesis offers key capabilities to cost-effectively process streaming data at any scale, along with the flexibility to choose the tools that best suit the requirements of your application. With Amazon Kinesis, you can ingest real-time data such as video, audio, application logs, website clickstreams, and IoT telemetry data for machine learning, analytics, and other applications. Amazon Kinesis enables you to process and analyze data as it arrives and respond instantly instead of having to wait until all your data is collected before the processing can begin.

**FIGURE 5**

*See* https://aws.amazon.com/kinesis/

## More customers pick Amazon Redshift than any other cloud data warehouse

Redshift powers analytical workloads for Fortune 500 companies, startups, and everything in between. Companies like Lyft have grown with Redshift from startups to multi-billion dollar enterprises.

Learn more about Redshift customers »

**FIGURE 6**

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    17

*See* https://aws.amazon.com/redshift/?whats-new-cards.sort-
by=item.additionalFields.postDateTime&whats-new-cards.sort-order=desc

52.     On information and belief, the DoorDash Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.  Such components are maintained in the servers and associated hardware of the aforementioned data centers.  *See* Figs. 1-6 (describing the apparatus comprising data centers with servers, which further comprise the Aurora database cluster (memory/processing device), Amazon Elasticache (processing device/receiver/transmitter), Cloudwatch (processing device), Kinesis (processing device/receiver/transmitter), and Redshift (memory/processing device)).

53.     As described above (*see* ¶¶ 51-52), and on information and belief, the DoorDash Accused Instrumentalities comprise a memory device, which stores information regarding at least work schedule information and/or scheduling information for individual drivers (which DoorDash calls "Dashers") in the DoorDash network, each of whom are, on information and belief, employed by DoorDash as independent contractors.  *See* Figs. 7-8.



**FIGURE 7**

*See* https://help.doordash.com/dashers/s/ica-us?language=en_US

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    18



**FIGURE 8**

*See* https://www.doordash.com/dasher/signup/#faq

54.     The DoorDash Accused Instrumentalities store work schedule information for each such Dasher (independent contractor) by virtue of the DoorDash Driver App, which allows Dashers to set their availability for food order deliveries (which DoorDash calls a "dash").  *See* Figs. 9-12.



**FIGURE 9**

*See* https://www.doordash.com/dasher/signup/#faq



**FIGURE 10**

*See* https://www.doordash.com/dasher/signup/#faq



**FIGURE 11**

*See* "How to Use the Doordash Driver App: Guide & Tutorial For New Dashers in 2020," available at https://www.youtube.com/watch?v=C0VAxypD0_k



**FIGURE 12**

*See* "How to Use the Doordash Driver App: Guide & Tutorial For New Dashers in 2020," available at https://www.youtube.com/watch?v=C0VAxypD0_k

55.     As described above (*see* ¶¶ 51-52), and on information and belief, the DoorDash Accused Instrumentalities comprise a receiver for receiving a first request from a first communication device (*e.g.,* the mobile device or computing device of the DoorDash Mobile App for Consumers or of the DoorDash web page at www.doordash.com) associated with a hiring entity (*e.g.,* the user of the DoorDash Consumer App and/or the user of the DoorDash web page at doordash.com).  On information and belief, when a user seeks to place a food order using the DoorDash apparatus, a first request is generated to obtain the work schedule information for the known available Dashers

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                           21

(independent contractors) in order to generate an estimated time of arrival (ETA). If acceptable, the user has the option of placing the food order and completing the transaction. *See* Figs. 13-18. The generation of the ETA is performed by the processing device and its related software (as discussed above, *see* ¶¶ 51-52) of the Accused Instrumentality, and is generated in real-time upon the processing of the information contained in the first request. On information and belief, the delivery of the ETA to the first communication device originates with the transmitter and its associated software of the Accused Instrumentality (as discussed above, *see* ¶¶ 51-52) and contains work scheduling information for the known available independent contractors.



**FIGURE 13**

*See* https://www.doordash.com/en-US



**FIGURE 14**

*See* https://apps.apple.com/app/id719972451?mt=8



**FIGURE 15**

*See* "How To Order Food Delivery with the DoorDash App Walk Thru - DoorDash Promo Coupon Code," available at https://www.youtube.com/watch?v=UHppt760_gA

**FIGURE 16**

*See* https://doordash.engineering/2020/02/28/next-generation-optimization-for-dasher-dispatch-at-doordash/

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                    24



**FIGURE 17**

*See* "How to Use the Doordash Driver App: Guide & Tutorial For New Dashers in 2020," available at https://www.youtube.com/watch?v=C0VAxypD0_k



**FIGURE 18**

*See* "How to Use the Doordash Driver App: Guide & Tutorial For New Dashers in 2020," available at https://www.youtube.com/watch?v=C0VAxypD0_k

56.      On information and belief, when a consumer submits a food order using the DoorDash Accused Instrumentalities, the order comprises a second request to engage and obtain the DoorDash Dasher in the vicinity, and to thereafter receive delivery/status information.  Such orders are transmitted electronically (via, for example, the Internet) from the first communication device to the receiver of the Accused Instrumentality, and such orders contain information for reserving, engaging, or requesting the services of the DoorDash Independent Contractor.  The processing device of the Accused Instrumentality processes the information contained in the second request in order to

reserve the services of the Independent Contractor.  On information and belief, the DoorDash Dashers are notified via "push notification" when a new food order (dash) is available for fulfillment.  On information and belief, Dashers are notified of available dashes based on their proximity to the restaurant that the consumer has ordered from.  On information and belief, a dash is assigned to the first notified Dasher that accepts the batch.  The notification to drivers is carried out by way of one or more "second messages" containing the details of the opportunity, and are transmitted from the transmitter of the Accused Instrumentality to the second communication device (*e.g.,* the mobile device of the DoorDash Mobile App for drivers) associated with the driver. The second request is confirmed, and the consumer is given real-time information regarding the Dasher's progress via the DoorDash Consumer App.  *See* Figs. 19-20.



**FIGURE 19**

*See* "How to Use the Doordash Driver App: Guide & Tutorial For New Dashers in 2020," available at https://www.youtube.com/watch?v=C0VAxypD0_k



**FIGURE 20**

*See* "How To Order Food Delivery with the DoorDash App Walk Thru - DoorDash Promo Coupon Code," available at https://www.youtube.com/watch?v=UHppt760_gA

57.     Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant in the United States, and such apparatus directly performs all functionality as claimed.

58.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

59.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

60.     Defendant has been on notice of infringement of the '194 Patent at least as early as the date it received service of the Original Complaint.  As such, to the extent Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

61.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

62.     Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

## COUNT II
### Infringement of U.S. Patent No. 7,490,086

63.     Plaintiff incorporates the above paragraphs by reference.

64.     Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of the Original Complaint in this matter.

65.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

66.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

67.     As discussed above (see ¶¶ 51-52), the Accused Instrumentalities comprise an apparatus for providing recruitment information, including an apparatus comprising a memory device, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent

contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.

68.    As discussed above (*see* ¶¶ 51-52), and on information and belief, the DoorDash Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

69.    As discussed above (*see* ¶ 53), and on information and belief, the DoorDash Accused Instrumentalities comprise a memory device, which stores information regarding at individuals available for applying for a job opportunity or hiring need.  On information and belief, the DoorDash memory device stores information concerning dashers who are available and willing to accept assignments within the DoorDash network.  Each such dasher, on information and belief, is employed by DoorDash as an independent contractor and is retained by users of the DoorDash apparatus to perform specific, defined tasks for the benefit of the user.

70.    As discussed above (*see* ¶ 54), and on information and belief, the DoorDash Accused Instrumentalities store work schedule information for each such Dasher (independent contractor) by virtue of the DoorDash Driver App, which allows Dashers to set their availability for food orders (dashes).

71.    As discussed above (*see* ¶¶ 55-56), and on information and belief, the DoorDash Accused Instrumentalities comprise a processing device which automatically detects and processes searching events, which occur when a user of the DoorDash apparatus submits a food order (each of which are detected in real-time (*i.e.,* automatically) by the Accused Instrumentality).  Each such food order comprises a job posting for DoorDash Dashers, and otherwise comprises an event which

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                      31

creates an interest in an individual (the dasher) to seek and accept the position. On information and belief, information relating to such requests is stored in the memory device of the Accused Instrumentality.

72.   As discussed above (*see* ¶¶ 55-56), and on information and belief, the DoorDash Accused Instrumentalities comprise a processing device which processes the information relating to the search request and information regarding the individual drivers to generate a message containing information regarding the individual, *e.g.,* the Dasher, (including but not limited to, availability, proximity, acceptance, identity, photo, estimated time of arrival, and location). The message is transmitted to the communication device (*i.e,,* the mobile device of the DoorDash Mobile Application of the user) associated with the user (employer or hiring entity) electronically via the DoorDash Mobile Application or via the DoorDash website.

73.   Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant in the United States, and such apparatus directly performs all functionality as claimed.

74.   The foregoing infringement on the part of Defendant has caused injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

75.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

76.   Defendant has been on notice of infringement of the '086 Patent at least as early as the date it received service of the Original Complaint. As such, to the extent Defendant continues its infringing activity post-notice, then all such activity is necessarily willful and deliberate.

77.   On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the

patents of others for clearance or to assess infringement thereof.  As such,  Defendant has been willfully blind to the patent rights of Plaintiff.

78.     Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

**COUNT III**
**Infringement of U.S. Patent No. 9,760,864**

79.     Plaintiff incorporates the above paragraphs by reference.

80.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

81.     Upon information and belief, Defendant has directly infringed at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

82.     As discussed above (*see* ¶ 51), and on information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information, which comprises at least a memory device, a receiver, a processor, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.

83.     As discussed above (*see* ¶¶ 51-52), and on information and belief, the DoorDash Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

84.     As discussed above (*see* ¶ 53), and on information and belief, the DoorDash Accused Instrumentalities comprise a memory device or database, which stores at least work schedule information and/or scheduling information for individual dashers in the DoorDash network, each of whom are, on information and belief, employed by DoorDash as independent contractors.

85.     As discussed above (*see* ¶ 54), and on information and belief, the DoorDash Accused Instrumentalities store work schedule information for each such Dasher (independent contractor) by virtue of the DoorDash Driver App, which allows Dashers to set their availability for food orders ("Dashes").

86.     As discussed above (*see* ¶ 55), and on information and belief, the DoorDash Accused Instrumentalities comprise a receiver for receiving a first request from a communication device associated with a hiring entity (*e.g.,* the user of the DoorDash Consumer App and/or the user of the DoorDash web page at doordash.com).  On information and belief, when a user seeks to place an order using the DoorDash apparatus, a first request is generated to obtain the work schedule information for the known available Dashers (independent contractors) in order to generate an estimated time of arrival (ETA).  If acceptable, the user has the option of placing the food order and completing the transaction.

87.     As discussed above (*see* ¶ 56), and on information and belief, when a consumer submits a food order using the DoorDash Accused Instrumentalities, the food order comprises a second request to engage and obtain the DoorDash Dasher in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the DoorDash Dashers are notified via "push notification" when a new food order (dash) is available for fulfillment.  On information and belief, Dashers are notified of available dashes based on their proximity to the restaurant that the consumer has ordered from.  On information and belief, a dash is assigned to the first notified Dasher that accepts

the batch.  The second request is confirmed, and the consumer is given real-time information regarding the Dasher's progress via the DoorDash Consumer App.

88.  Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant in the United States, and such apparatus directly performs all functionality as claimed.

89.  The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

90.  Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

91.  Defendant has been on notice of infringement of the '864 Patent at least as early as the date it received service of the Original Complaint.

92.  On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

93.  Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

## COUNT IV
## Infringement of U.S. Patent No. 10,096,000

94.  Plaintiff incorporates the above paragraphs by reference.

95.  Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

96.  Upon information and belief, Defendant has directly infringed at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

97.     As discussed above (*see* ¶¶ 51-52), and on information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information; such apparatus comprises at least a memory device, a receiver, a processing device, and a transmitter.  The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States. On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.

98.      As discussed above (*see* ¶¶ 51-52), and on information and belief, the DoorDash Accused Instrumentalities comprise data centers housing memory devices, processing devices, receivers, and transmitters.

99.     As discussed above (*see* ¶ 53), and on information and belief, the DoorDash Accused Instrumentalities comprise a memory device or database, which stores information regarding at least work schedule information and/or scheduling information for Dashers in the DoorDash network, each of whom are, on information and belief, employed by DoorDash as independent contractors.

100.    As discussed above (*see* ¶ 54), and on information and belief, the DoorDash Accused Instrumentalities store work schedule information for each such Dasher (independent contractor) by virtue of the DoorDash Driver App, which allows Dashers to set their availability for food orders ("Dashes").

101.    As discussed above (*see* ¶ 55), and on information and belief, the DoorDash Accused Instrumentalities comprise a receiver for receiving a first request from a communication device

associated with a hiring entity (*e.g.,* the user of the DoorDash Consumer App and/or the user of the DoorDash web page at DoorDash.com).  On information and belief, when a user seeks to place a food order using the DoorDash apparatus, a first request is generated to obtain the work schedule information for the known available Dashers (independent contractors) in order to generate an estimated time of arrival (ETA).  If acceptable, the user has the option of placing the food order and completing the transaction.

102.    As discussed above (*see* ¶ 56), and on information and belief, when a consumer submits a food order using the DoorDash Accused Instrumentalities, the food order comprises a second request to engage and obtain the DoorDash Dasher in the vicinity, and to thereafter receive delivery/status information.  On information and belief, the DoorDash Dashers are notified via "push notification" when a new food order (dash) is available for fulfillment.  On information and belief, Dashers are notified of available dashes based on their proximity to the restaurant that the consumer has ordered from.  On information and belief, a dash is assigned to the first notified Dasher that accepts the batch.  The second request is confirmed, and the consumer is given real-time information regarding the Dasher's progress via the DoorDash Consumer App.

103.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

104.    Each element of the infringing apparatus is, on information and belief, owned and controlled by Defendant in the United States, and such apparatus directly performs all functionality as claimed.

105.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT                                                    37

106.    Defendant has been on notice of infringement of the '000 Patent at least as early as the date it received service of the Original Complaint.

107.    On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

108.    Based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant has infringed each of the Asserted Patents;

2.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's willful infringement of the Asserted Patents;

4.      Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

5.      Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

6.      Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

## **JURY DEMAND**

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Dated:  November 16, 2020

Respectfully Submitted

*/s/ M. Scott Fuller*
Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400


Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950


**ATTORNEYS FOR**
**GREATGIGZ SOLUTIONS, LLC**